**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 18 B 3134 |
| MOHAMMAD TAHSEEN, | ) | |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| | ) | |
| PATRICK S. LAYNG, | ) | |
| UNITED STATES TRUSTEE, | ) | Adv. No. 22 A 16 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MOHAMMAD TAHSEEN, | ) | Judge David D. Cleary |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter comes before the court on cross motions for summary judgment, one filed by the United States Trustee ("Plaintiff" or "U.S. Trustee"), and one filed by Defendant Mohammad Tahseen ("Defendant," "Debtor" or "Tahseen"). Each motion seeks entry of judgment on all three counts of the underlying complaint ("Complaint"). In the Complaint, the U.S. Trustee requests that the court revoke Tahseen's discharge under 11 U.S.C. §§ 727(d)(2) and (d)(3).[1] The court reviewed the relevant papers and pleadings. For the reasons stated below, the court will deny both the U.S. Trustee's motion and Tahseen's motion.

---

[1] The introductory paragraph of the Complaint also states that Plaintiff seeks relief under 11 U.S.C. § 727(d)(1). This is the only mention of § 727(d)(1) in the Complaint, and a claim under that subsection would be time-barred in any event.

## I.     JURISDICTION

The court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(J). Venue is proper under 28 U.S.C. § 1409(a).

## II.     BACKGROUND

### A.  Statements of Undisputed Facts under Local Bankruptcy Rule 7056-1

Pursuant to Local Bankr. R. 7056-1, a party moving for summary judgment must file a statement of undisputed material facts ("7056-1 Statement").  The 7056-1 Statement "must consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph.  Failure to submit such a statement constitutes grounds for denial of the motion."  Local Bankr. R. 7056-1B.

The party opposing a motion for summary judgment is required by Local Bankr. R. 7056-2 to respond "to each numbered paragraph in the moving party's statement[.]"  Local Bankr. R. 7056-2A(2)(a).  The opposing party must also file "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon[.]" *Id.* at (2)(b).

If the opposing party files a statement of additional facts, then "the moving party may submit a concise reply in the form prescribed in Rule 7056-2 for response.  All additional material facts set forth in the opposing party's statement filed under section A(2)(b) of Rule 7056-2 will be deemed admitted unless controverted by a statement of the moving party filed in reply."  Local Bankr. R. 7056-1C.

With their motions for summary judgment, the U.S. Trustee and Tahseen each filed a statement of uncontested facts.  The U.S. Trustee responded to Tahseen's statement and filed a statement of additional facts in opposition.  Although the court had entered scheduling orders, *see* EOD 44 and 46, Tahseen filed his response to the U.S. Trustee's statement of facts and his reply to the U.S. Trustee's additional facts less than 24 hours before the status hearing at which the court took these matters under advisement.

Fed. R. Civ. P. 56(e), made applicable by Fed. R. Bankr. P. 7056, provides that:

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials-- including the facts considered undisputed--show that the movant is entitled to it; or

(4) issue any other appropriate order.

The court could strike Tahseen's late response and reply, which were filed six weeks and two weeks after the deadline, respectively.  Although the U.S. Trustee has not requested this relief, it is well within this court's authority to enforce its scheduling orders.  *See Castelino v. Rose-Hulman Inst. of Tech.*, 999 F.3d 1031, 1043 (7th Cir. 2021) ("Rule 16(f)(1)(c) authorizes the district court to impose sanctions if a party or its attorney ... fails to obey a scheduling or other pretrial order.") (quotation omitted).  The discussion and briefing of these motions, however, has been ongoing for approximately a year.  It is time to bring this phase of the adversary proceeding to a close, and to rule on the summary judgment motions with all available facts.  *See Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) ("a failure to file a timely response to such a motion is not a basis for automatically granting summary judgment as some

3

kind of sanction").  Therefore, the court has reviewed all statements of uncontested material facts and responses.  All admitted and relevant facts are summarized below.

### B. Admitted and Undisputed Facts

#### 1. General background

Defendant is an individual domiciled in Elk Grove Village, Illinois.  (Defendant's Statement ("DS") ¶ 2.)  Plaintiff is the United States Trustee for Region 11.  (United States Trustee's Statement ("USTS") ¶ 1; DS ¶ 8.)

Defendant filed for relief under chapter 13 of the Bankruptcy Code on February 4, 2018 ("Petition Date"), commencing case number 18-3134 ("Bankruptcy Case").  (USTS ¶¶ 2, 9.)

On the Petition Date, Defendant filed his petition, schedules and Statement of Financial Affairs.  (USTS ¶ 10.)  These were completed under penalty of perjury, and Defendant swore that they were complete, accurate and truthful.  (USTS ¶ 11.)

Among other assets, Defendant had scheduled a parcel of real property located at 128 Essex Road, Elk Grove Village, Illinois ("Real Property").  (USTS ¶ 16; U.S. Trustee's Statement in Opposition ("USTOpp") ¶ 2.)

Defendant had not granted a mortgage on the Real Property as of the Petition Date. (USTS ¶ 18; USTOpp ¶ 4.)  The real estate taxes, however, had been sold to a tax purchaser. (USTS ¶ 19; USTOpp ¶ 5.)

Richard Fonfrias represented Defendant at the time he filed for relief under the Bankruptcy Code.  The court granted Fonfrias's motion to withdraw on June 30, 2021. (DS ¶ 6.)

Defendant filed amended schedules on July 8 and 23, 2018, as well as October 10, 2018, and June 2, 2020.  (USTS ¶ 12.)

Defendant voluntarily converted the Bankruptcy Case to chapter 7 on September 20, 2018. (DS ¶ 4; USTS ¶ 13.)

Defendant was unemployed at the time he filed for relief under the Bankruptcy Code and when he converted the Bankruptcy Case to one under chapter 7.  He is now a Scrum Master, which is a software development team leader. (DS ¶ 3.)

On or about September 20, 2018, Andrew Maxwell was appointed as the chapter 7 trustee ("Trustee") in Defendant's bankruptcy case.  (USTS ¶ 14.)  The Trustee filed an asset report on December 5, 2018.  (USTS ¶ 15; USTOpp ¶ 1.)

Defendant was granted a discharge on December 26, 2018.  (USTS ¶ 22; USTOpp ¶ 8; DS ¶ 5.)

**2.  Defendant transfers an interest in the Real Property to his wife**

On his schedules, Defendant stated that he was the only person with an ownership interest in the Real Property.  (USTS ¶ 17; USTOpp ¶ 3.)  On December 30, 2019, Defendant executed a quit claim deed transferring the Real Property to himself and his wife, Samantha Tahseen ("Samantha"), as joint tenants.  (USTS ¶ 23; USTOpp ¶ 9.)

At no time did Defendant amend his schedules to reflect that he transferred an interest in the Real Property to Samantha.  (USTS ¶ 24; USTOpp ¶ 10.)  The Schedule A currently on file in the bankruptcy case states that Defendant is the sole owner of the Real Property.  (Bankruptcy Case EOD 34.)[2]

Defendant did not file a motion seeking court authority to transfer an interest in the Real Property to Samantha.  (USTS ¶ 25; USTOpp ¶ 12.)

---

[2] Fed. R. Civ. P. 56(c)(3) provides that the court "need consider only the cited materials, but it may consider other materials in the record" when deciding a motion for summary judgment.

Defendant did not modify the automatic stay before transferring an interest in the Real Property to Samantha.  (USTS ¶ 26; USTOpp ¶ 13.)

### 3.  Defendant grants a mortgage on the Real Property

At no time in the Bankruptcy Case did the Defendant file a motion seeking authority to obtain post-petition financing.  (USTS ¶ 20; USTOpp ¶ 6; *see generally*, Bankruptcy Case docket.)

In April 2021, Defendant obtained a loan from Amerisave Mortgage Corporation in the original principal amount of $252,340.00.  (USTS ¶ 27; USTOpp ¶ 14; *see also* DS ¶ 11.)

In consideration for this loan, Defendant granted Amerisave a mortgage ("Mortgage") on the Real Property.  (USTS ¶ 28; USTOpp ¶ 15.)  Defendant did not seek court authority to grant a mortgage on the Real Property.  (*See generally*, Bankruptcy Case docket.)

The Defendant received net proceeds from the Mortgage in the amount of $184,637.03. (Order Granting in Part and Denying in Part Trustee's Motion for Entry of Order Holding Debtor in Contempt of Court ("Contempt Order"), p. 2.)

Defendant filed a motion to compel abandonment of the Real Property on May 17, 2021 ("Motion to Abandon").  (DS ¶ 12; USTS ¶ 29; USTOpp ¶ 16.)

Prior to the filing of the Motion to Abandon, there had not been a docket entry in the Bankruptcy Case in 10 months.  (DS ¶ 13.)

Nowhere in the Motion to Abandon did the Defendant disclose that he had taken out a loan and granted a mortgage on the Real Property.  (USTS ¶ 30; USTOpp ¶ 17.)

On May 21, 2021, the Trustee filed a notice of objection to the Motion to Abandon ("Abandon Objection").  (USTS ¶ 31; USTOpp ¶ 18; Bankruptcy Case EOD 155.)

In the Abandon Objection, the Trustee alleged that he had tried to market and sell the Real Property, but his broker reported that Defendant was uncooperative.  In light of the

6

COVID-19 pandemic, the Trustee had not sought to compel access to the Real Property. (Abandon Objection, pp. 2-3.)

In support of the Motion to Abandon, Debtor's counsel provided the Trustee with documents.  (USTS ¶ 33; USTOpp ¶ 20.)

One of the documents provided to the Trustee was a mortgage statement evidencing the Mortgage on the Real Property.  (USTS ¶ 34; USTOpp ¶ 21.)

**4.  Trustee files a motion for turnover**

The Trustee informally requested a copy of the Mortgage documents and turnover of all funds obtained from the underlying loan.  When no documents or funds were forthcoming, Trustee filed a motion to compel Debtor to deliver property of the estate ("Motion for Turnover").  (Contempt Order, p. 2; DS ¶ 14; Bankruptcy Case EOD 160.)

In the Motion for Turnover, the Trustee alleged:

> In support of Debtor's recent [Motion to Abandon], Debtor tendered to Trustee a number of real estate tax bills showing payment of various past due real estate taxes on the House (see footnote 1, above), but the last document tendered by Debtor's counsel was a mortgage statement indicating a mortgage on the House.

(Motion for Turnover, ¶ 7 (footnote omitted); DS ¶ 15.)

The Trustee attached that mortgage statement as an exhibit to his Motion for Turnover. (DS ¶ 16.)

The mortgage statement was dated May 3, 2021, had a payment due date of June 1, 2021, and showed a maturity date exactly 30 years in the future in May 2051.  (DS ¶ 17.)

The mortgage statement showed no prior payment history, other than a large payment on May 3, 2021, which exactly equaled the Current Escrow Account Balance set forth elsewhere on the statement.  (DS ¶ 18.)

The mortgage statement in the Trustee's exhibit was the first mortgage statement for the loan.  (DS ¶ 19.)

On June 16, 2021, the court entered a scheduling order allowing Defendant time to file a response to the Motion for Turnover.  Defendant timely filed his objection on June 21, 2021. (Bankruptcy Case EOD 168 and 169.)  At no time during the briefing on the Motion for Turnover did the Defendant turn over the proceeds of the mortgage loan.  (USTS ¶ 42; USTOpp ¶ 29.)

**5. Court grants the motion for turnover, and the Trustee brings a motion for contempt when Defendant does not comply with the turnover order**

On June 23, 2021, over Defendant's written objection, the court granted the Motion for Turnover and entered an order ("Turnover Order") which required production of certain documents and funds to the Trustee. (USTS ¶ 43; USTOpp ¶ 30; DS ¶ 20.)

The Turnover Order required, within five days, that the Debtor turn over to or at the Trustee's direction:

a. evidence of insurance on the [Real Property] as defined in the [Motion for Turnover]
b. a complete copy of the mortgage loan documents, if any, including but not limited to the promissory note, mortgage, the closing statement for the mortgage loan, and a copy of the evidence of payment of proceeds (e.g., check copy, wire transfer confirmation, ACH transfer confirmation, or similar);
c. payment to Trustee in the full amount of the proceeds of the mortgage loan in a manner that will most expeditiously transfer the funds from the Debtor to the Trustee;
d. In addition, depending on where the mortgage loan proceeds were deposited, Debtor shall provide Trustee a copy of each bank or other financial statement for the account where the mortgage loan proceeds were deposited and complete details of any disbursement of any part of those funds.

(USTS ¶ 44; USTOpp ¶ 31.)  The Turnover Order also continued the Motion for Turnover to June 30, 2021, for status and further hearing on compliance.  (Bankruptcy Case EOD 172.)

The Trustee served the Defendant and Defendant's attorney with the Turnover Order on June 23, 2021.  (USTS ¶¶ 45-46; USTOpp ¶¶ 32-33.)

On July 13, 2021, the Defendant drew a cashier's check in the amount of $45,588 payable to the Trustee ("Cashier's Check").  (USTS ¶ 47; USTOpp ¶ 34.)

The Defendant disclosed the existence of the Cashier's Check to the Trustee but did not turn it over to the Trustee on or before July 28, 2021, the date the Trustee filed his next motion.  (USTS ¶¶ 48-49; USTOpp ¶¶ 35-36.)

On July 28, 2021, the Trustee filed his Motion for Entry of Order Holding Debtor in Contempt of Court ("Contempt Motion").  (USTOpp ¶ 38; DS ¶ 22.)  In the Contempt Motion, the Trustee acknowledged that Defendant had complied with the Turnover Order in part, by tendering certain documents.  (DS ¶ 23; USTS ¶ 51.)

> However, Debtor failed to pay the Trustee the full amount of the proceeds of the mortgage loan, to provide a copy of each bank statement for the account where the mortgage loan proceeds were deposited and to give complete details of any disbursement of any part of those funds.

(Order Granting in Part and Denying in Part Trustee's Motion for Entry of Order Holding Debtor in Contempt of Court ("Contempt Order"), p. 3.)

The court entered a briefing schedule on the Contempt Motion and set the matter for evidentiary hearing on October 13, 2021.  (DS ¶ 24; USTS ¶ 64; USTOpp ¶ 51.)

On July 30, 2021, the Defendant filed his Objection to Trustee's Motion for Entry of Order Holding Debtor in Contempt of Court ("Contempt Response").  (USTS ¶ 54; USTOpp ¶ 41.)

The Defendant attached, as an exhibit to the Contempt Response, a copy of the Cashier's Check.  (USTS ¶ 55; USTOpp ¶ 42.)  The Cashier's Check was in an amount less than the net proceeds of the mortgage loan that the Defendant had received.  (Contempt Response, Ex. A.)

9

Despite being ordered to turn over "the full amount of the proceeds of the mortgage loan in a manner that will most expeditiously transfer the funds from the Debtor to the Trustee," the Defendant argued in the Contempt Response that he could not effectuate turnover without being provided "the sum that the Trustee requires to be paid."  (Turnover Order; USTS ¶ 56; USTOpp ¶ 43; Contempt Response ¶ 24.)

Defendant additionally wrote in the Contempt Response:

> The undersigned has sought repeatedly on behalf of the Debtor, both before and after the Debtor obtained the [Cashier's C]heck, to obtain confirmation from the Trustee, as is customary in Chapter 7 asset cases, of the amount the Trustee is seeking to complete the liquidation phase and commence distribution to the allowed creditors.

(Contempt Response ¶ 25.)

On August 3, 2021, the Trustee filed his Response to the Debtor's Objection to Motion for Entry of Order Holding Debtor in Contempt of Court ("Contempt Reply").  (USTS ¶ 60; USTOpp ¶ 47.)

In the Contempt Reply, the Trustee alleged that Defendant had partially complied with the Turnover Order by tendering certain documents but had "not complied with other parts of the Turnover [O]rder, most notably the failure to turn over any funds to the estate and to tender a full accounting of receipts and disbursements of the proceeds of the mortgage loan he improperly obtained against property of the estate."  (Contempt Reply, ¶ 2.)

To the Contempt Reply, the Trustee attached communications between himself and the Defendant's attorney in which the Debtor sought to negotiate his obligations to the estate.  These communications included a copy of the Cashier's Check.  (USTS ¶ 62; USTOpp ¶ 49.)

The Cashier's Check was tendered to the Trustee on August 11, 2021.  (Contempt Order, p. 3.)

On October 7, 2021, the Defendant filed his Brief in Opposition to a Finding of Contempt of Court ("Opposition Brief").  (USTS ¶ 65; USTOpp ¶ 52.)

In the Opposition Brief, Defendant argued that he complied with all of his obligations under the Turnover Order.  (USTS ¶ 66; USTOpp ¶ 53; Opposition Brief ¶ 2.)

As part of that argument, Defendant alleged that he delivered the Cashier's Check.  "The amount of the check was the amount of the remaining proceeds of the loan after certain disbursements, the vast majority being payment of over $82,000 of real estate taxes on the Debtor's residence[.]"  (Opposition Brief ¶ 12.)  Defendant made no mention in the Opposition Brief of holding additional funds.  (*See generally*, *id*.; USTS ¶ 68; USTOpp ¶ 55.)

Defendant testified at the evidentiary hearing on October 13, 2021.  (USTS ¶ 69; USTOpp ¶ 56.)  Among other testimony, he stated that to substantiate the repairs made to the Real Property and other expenditures of the funds from the Mortgage, he provided the Trustee with a reconciliation.  However, Defendant "admitted that not all repair items on the reconciliation actually had been incurred.  Instead, some items on the reconciliation were simply allocated based on estimates and quotes."  (USTS ¶¶ 70-72; USTOpp ¶¶ 57-59.)

6. **The court holds Defendant in contempt for failure to comply with the Turnover Order**

After the evidentiary hearing, on October 21, 2021, the court entered the Contempt Order.  (DS ¶ 25.)

In the Contempt Order, the court wrote: "The parties agree that the Debtor complied with paragraphs (a) and (b) of the Turnover Order."  The court found that the "Debtor has complied with Paragraph (d)" of the Turnover Order. (DS ¶ 26.)

The court held the Defendant "in contempt of court for failure to comply with paragraph (c) of the Turnover Order."  (USTS ¶¶ 74-75; USTOpp ¶ 61-62; DS ¶ 27.)  This paragraph

required Defendant to make "payment to Trustee in the full amount of the proceeds of the mortgage loan in a manner that will most expeditiously transfer the funds from the Debtor to the Trustee[.]"  (Turnover Order.)

The court concluded that Defendant had justified the payment of $45,588, the amount in the Cashier's Check, "rather than payment of all proceeds, by asserting that proceeds were used for taxes and repairs made, or allocated to be made," to the Real Property.  (Contempt Order, p. 5.)  Defendant testified that he provided the Trustee "with a detailed reconciliation and supporting documentation.  The reconciliation was not admitted as evidence nor provided to the court."  (*Id.*)

> The Debtor further admitted that not all repair items on the reconciliation actually had been incurred.  Instead, some items on the reconciliation were simply allocated based on estimates and quotes.  Debtor's counsel could not verify the amount of funds held by, or within the control of the Debtor, for the allocated items.

(*Id.*)

The Contempt Order allowed the Defendant to purge his contempt "by 1) turning over all proceeds from the mortgage loan held by the Debtor, or within control of the Debtor, whether allocated for repairs or any other expense and 2) filing with the Court and providing to the Trustee a copy [of] the mortgage loan reconciliation and all supporting documentation."  (USTS ¶ 76; USTOpp ¶ 63.)

### 7.  Defendant purges his contempt

On November 3, 2021, the Defendant secured a second cashier's check ("Second Cashier's Check").  (USTS ¶ 77; USTOpp ¶ 64.)

The Second Cashier's Check was payable to "U.S. Trustee Andrew Maxwell" in the amount of $35,733.34 (the "Additional Funds") (USTS ¶¶ 78-79; USTOpp ¶¶ 65-66.)

12

About November 3, 2021, the Defendant remitted the Second Cashier's Check to the Trustee.  (USTS ¶ 80; USTOpp ¶ 67.)

The Trustee acknowledged receipt of the funds in open court at the next hearing on November 17, 2021, and by order entered the following day, the court found that the Defendant had purged the contempt.  (DS ¶ 28.)

### 8.   Post-contempt activity in the Bankruptcy Case and this adversary proceeding

After the conclusion of the contempt proceeding, and as provided for in the Contempt Order, the Trustee filed a request for fees incurred in his capacity as his attorney with respect to litigating the Turnover Order and the Contempt Order.  (USTS ¶ 81; USTOpp ¶ 68.)

The Defendant objected to the Trustee's fee request.  (USTS ¶ 82; USTOpp ¶ 69.)

On January 28, 2022, the court overruled the Defendant's objection and awarded the Trustee $5,353 in fees as a sanction against the Defendant.  (USTS ¶ 83; USTOpp ¶ 70.)

On January 26, 2022, the Plaintiff filed this adversary proceeding, seeking revocation of the Defendant's discharge.  (USTS ¶¶ 84-85; USTOpp ¶¶ 71-72.)

In determining how to proceed on the complaint, the parties agreed that Count III was appropriate for disposition by summary judgment.  (USTS ¶ 90; USTOpp ¶ 77.)

Instead of filing cross motions for summary judgment, the parties obtained a briefing schedule ordered by the court to govern the matter (the "Scheduling Order").  (USTS ¶ 91; USTOpp ¶ 78.)

The Defendant failed to file his motion for summary judgment timely, so the Plaintiff filed a motion to amend the Scheduling Order.  (USTS ¶¶ 92-93; USTOpp ¶¶ 79-80.)

On June 27, 2022, the court granted the Plaintiff's motion and entered an amended scheduling order.  Defendant filed his motion for summary judgment three days later, seeking summary judgment on all three counts of the complaint.  (USTS ¶¶ 94-96; USTOpp ¶¶ 81-83.)

The Plaintiff filed his Motion to Clarify Scheduling Order ("Motion to Clarify"), which the court granted on July 20, 2022.  The court also entered a discovery cutoff.  (USTS ¶¶ 97-98; USTOpp ¶¶ 84-85.)

The Plaintiff served the Defendant with a subpoena ("Subpoena") and a request for production of documents.  (USTS ¶ 99; USTOpp ¶ 86.)

The Defendant did not assert any objections to the Subpoena before the return date. (USTS ¶ 100; USTOpp ¶ 87.)

The Defendant did not produce documents responsive to the Subpoena on or before the return date.  (USTS ¶ 101; USTOpp ¶ 88.)

As a result of the failure to respond to the Subpoena, the Plaintiff attempted to communicate with Defendant's counsel regarding compliance with the Subpoena.  (USTS ¶ 102; USTOpp ¶ 89.)

The Plaintiff filed a Motion to Compel Compliance with Subpoena, alleging that counsel had sent emails to Defendant's counsel requesting information when the Defendant would respond to the subpoena, and had not received a response.  (Motion to Compel Compliance with Subpoena, ¶ 13.)

The court entered an order compelling Defendant to respond to the Subpoena on or before August 31, 2022.  (USTS ¶ 105; USTOpp ¶ 92.)

On August 26, 2022, the Defendant responded to the Subpoena, asserting objections. (USTS ¶¶ 106-107; USTOpp ¶¶ 93-94.)

The Plaintiff filed a second motion to extend discovery to preserve the ability to continue discovery if the court does not grant summary judgment and resolve this adversary proceeding. The court granted that motion on January 18, 2023.  (USTS ¶ 108; USTOpp ¶¶ 95-96).

### III.    LEGAL ANALYSIS

**A.  Standard for a Motion for Summary Judgment**

The standard for a summary judgment motion is set forth in Fed. R. Civ. P. 56, made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7056. In ruling on the motion, the court must draw all reasonable inferences from the underlying facts in the responding party's favor.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Parkins v. Civ. Constructors of Illinois, Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998).

 Summary judgment is appropriate under Rule 56 if the moving party shows that no genuine issue of material fact exists and that it is entitled to prevail in the case as a matter of law. The party opposing summary judgment "must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita*, 475 U.S. at 587 (quotation omitted).  "Cross-motions must be evaluated together, and the court may not grant summary judgment for either side unless the admissible evidence as a whole—from both motions—establishes that no material facts are in dispute." *Bloodworth v. Vill. of Greendale*, 475 F. App'x 92, 95 (7th Cir. 2012) (unpublished order).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A mere scintilla of evidence in support of the nonmoving party's position is not sufficient; there

must be evidence on which the jury could reasonably find for the non-moving party." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013).

The Plaintiff seeks revocation of Defendant's discharge in three counts, under two subsections of 11 U.S.C. § 727(d).  Pursuant to section 727, chapter 7 debtors are entitled to a discharge.  Therefore, a request to revoke a discharge is construed strictly against the objecting creditor and liberally in favor of the debtor, in order to protect the debtor's fresh start.  *See Matter of Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996) (11 U.S.C. § 727(a)); *State Bank of India v. Kaliana* (*In re Kaliana*), 202 B.R. 600, 603 (Bankr. N.D. Ill. 1996).

**B.   Counts I and II: 11 U.S.C. § 727(d)(2) – Receipt and Concealment of Assets and Failure to Deliver or Surrender those Assets**

**1.   Standard under 11 U.S.C. § 727(d)(2)**

11 U.S.C. § 727(d)(2) states:

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if--…

(2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee[.]

In order to grant summary judgment to either party on the claims for relief under § 727(d)(2), the court must look at the admissible evidence as a whole and find that no material question of fact exists regarding whether the Defendant (1) acquired or became entitled to acquire property of the estate and (2) knowingly and fraudulently failed to report the acquisition of that property, or to deliver or surrender it to the trustee.  *See Steege v. Johnsson* (*In re Johnsson*), 551 B.R. 384, 403-04 (Bankr. N.D. Ill. 2016) ; *Rezin v. Barr* (*In re Barr*), 207 B.R. 168, 174 (Bankr. N.D. Ill. 1997).

16

## 2. Defendant acquired property of the estate

There is no material dispute of fact that the Plaintiff satisfied the first element of this test. Defendant acquired the proceeds of the Mortgage he granted on the Real Property.  Since the Real Property was property of the estate, proceeds from it are also property of the estate.  *See* 11 U.S.C. § 541(a)(6).  The questions before the court, therefore, are whether there is a material dispute of fact that Defendant knowingly and fraudulently failed to report its acquisition, or to deliver or surrender it to the Trustee.

## 3. Whether Defendant acted knowingly and fraudulently

The court must therefore determine whether there is a material issue of fact that Defendant's *delay* in reporting, delivering or surrendering the mortgage proceeds was a knowing and fraudulent failure to act.  Since the statute is disjunctive, if there is no dispute of fact regarding either a knowing and fraudulent failure to report, *or* a knowing and fraudulent failure to deliver, *or* a knowing and fraudulent failure to surrender, judgment can be entered.

> To find the requisite degree of fraudulent intent, the court must find the debtor knowingly intended to defraud the trustee, or engaged in such reckless behavior as to justify the finding of fraud.  The trustee may prove the debtor's fraud by evidence of the debtor's awareness of the omitted asset and by showing that the debtor … acted so recklessly in not reporting the asset that fraud is implied.  The bankruptcy court's finding of fraudulent intent may be based on inferences drawn from a course of conduct.  Additionally, fraudulent intent may also be inferred from all of the surrounding circumstances.

*Matter of Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992) (citations omitted).

### a. Contentions of the parties

Plaintiff argues that Defendant's course of conduct supports a finding of fraudulent intent.  Defendant did not request authority to grant a mortgage and did not disclose that transaction until after the Trustee discovered it, following his request for documents related to the Motion to Abandon.  When the Trustee did learn about the Mortgage, he demanded turnover

17

of the proceeds and supporting documents.  Defendant initially refused to turn over the proceeds.

The Trustee was forced to file the Motion for Turnover.  Defendant then obtained the Cashier's

Check and tried to settle the matter with the Trustee.  It was only after the Trustee filed the

Contempt Motion that Defendant tendered the Cashier's Check.

In fact, while Defendant argued that he had made a full disclosure and turned over all

proceeds from the Mortgage, he had not.  "In the accounting the Debtor previously submitted to

the Trustee, he indicated that he had spent the funds other than those represented by the

Cashier's Check.  Simply, the Debtor's accounting that he submitted to the Trustee and intended

that he rely upon was false."  Brief in Support of U.S. Trustee's Motion for Summary Judgment

("U.S. Trustee Brief"), p. 9.  Not until the court held the Defendant in contempt did he turn over

the Additional Funds in the Second Cashier's Check.

Plaintiff asserts that this pattern of conduct supports the conclusion that there is no

material question of fact that, at a minimum, Defendant acted with such reckless behavior as to

justify a finding of fraud.

In contrast, Defendant points out that while he did not immediately report the acquisition

of the Mortgage proceeds, did not immediately deliver those proceeds and did not immediately

surrender them, he had done so by the time Plaintiff filed the Complaint.  *See Johnsson*, 551 B.R.

at 406 ("[T]he Debtor still has not delivered the Inheritance, in full, to the Trustee."); *Richardson

v. Schoemperlen* (*In re Schoemperlen*), 332 B.R. 179, 182 (Bankr. C.D. Ill. 2005) ("The Court

notes that Mr. Schoemperlen turned over $4,515 to the Trustee on the eve of trial [on the

discharge revocation complaint]."). *But see Richardson v. Flaugher* (*In re Flaugher*), 525 B.R.

67, 73 (Bankr. C.D. Ill. 2015) ("The fact that the Debtor ultimately turned over a small fraction

of what he was required to and then only after the Trustee had tracked down the information …

18

on his own is, quite simply, 'too little, too late.'"").  Defendant acknowledges that his acts may have been misguided but asserts that he did not knowingly intend to defraud the Trustee or engage in reckless behavior.

Defendant also asserts that in a series of emails with the Trustee in 2019, he indicated interest in taking out a loan to buy out the Trustee's interest in the Real Property.  He argues that after a pandemic-induced pause, he granted the Mortgage, obtained the loan proceeds and re-engaged the Trustee.  Although Defendant admits that he "may not have made disclosure at the first moment … [he] ought to have made it," he did advise the Trustee about the Mortgage within several weeks.  Brief in Response to the U.S. Trustee's Motion for Summary Judgment, p. 5 ("Defendant's Responsive Brief").

Defendant bases this argument on a printout of an email chain that he attached to Defendant's Responsive Brief.  He did not include it in his statement of material facts, or in a statement of additional facts in opposition, but the court takes notice that a portion of this printout was docketed in the Bankruptcy Case at EOD 197 as an exhibit for the evidentiary hearing on the Contempt Motion.

**b. There is a material dispute of fact as to whether Defendant acted knowingly and fraudulently in failing to report, deliver or surrender property of the estate**

Considering the admissible evidence as a whole, is there any material dispute of fact that Defendant did or did not act knowingly and fraudulently in failing to report, deliver or surrender the loan proceeds?  Plaintiff urges the court to look at Defendant's entire pattern of conduct to find that Defendant acted with reckless disregard, which would justify a finding that he acted knowingly and fraudulently.  He focuses on the following actions:

-- Defendant did not request court authority before obtaining the Mortgage;

-- when Defendant filed the Motion to Abandon, he did not disclose the Mortgage;

19

--      the Trustee was required to file the Motion for Turnover to obtain documents and the proceeds from the Mortgage;

--      in the Turnover Order, the court ordered the Defendant to turn over: (a) evidence of insurance on the Real Property; (b) copies of the Mortgage loan documents; (c) payment to the Trustee in the full amount of the proceeds of the Mortgage loan; and (d) copies of bank statements for the accounts where the Mortgage proceeds were deposited;

--      the Trustee was required to file the Contempt Motion based on Defendant's failure to fully comply with the Turnover Order;

--      the court held an evidentiary hearing on the Contempt Motion; and

--      the court found Defendant in contempt for failure to turn over the proceeds of the Mortgage loan.

The undisputed facts before the court also show, however, that Defendant complied with the document request portion of the Turnover Order.  He participated fully in the evidentiary hearing on the Contempt Motion, at which he was found to have satisfied three of the four elements of the Turnover Order.  Within two weeks of entry of the Contempt Order, Defendant turned over the Additional Funds remaining from the proceeds of the Mortgage.

Additionally, Defendant raised questions about the information he shared with the Trustee informally.  The court is not making a finding that emails in 2019 about the possibility of take-out financing put the Trustee on notice that Defendant would grant a mortgage in 2021. What those emails do raise questions about, however, is Defendant's pattern of conduct and his intent during his interactions with the Trustee.

At this stage of the proceedings, the court cannot find that there is no dispute of material fact as to whether Defendant's course of conduct does or does not constitute reckless behavior

20

that would support a finding that he knowingly and fraudulently failed to report, or deliver, or surrender property.  The court is mindful that this situation began with a debtor who, without seeking court authority, granted a mortgage on his home.  A substantial amount of equity was available for the chapter 7 trustee, who had not taken any action in the bankruptcy case for many months.  Did the Defendant think he could take advantage of the Trustee's delay, quickly obtain an order compelling abandonment, and move on?

As illustrated by a comment in the Contempt Response, Defendant may have been operating under the mistaken belief that the Trustee was obligated to provide him with a dollar amount that would resolve the Bankruptcy Case.  "The undersigned has sought repeatedly on behalf of the Debtor, both before and after the Debtor obtained the [Cashier's C]heck, to obtain confirmation from the Trustee, as is customary in Chapter 7 asset cases, of the amount the Trustee is seeking to complete the liquidation phase and commence distribution to the allowed creditors."  Whether or not this is a correct description of the "custom" in chapter 7 cases, or whether and when the Defendant was informed otherwise, it suggests another explanation for Defendant's actions – that he wished to reach a consensual resolution with the Trustee.  It raises questions for the court, questions that are material to a determination of whether or not Defendant's pattern of conduct supports a finding that he acted knowingly and fraudulently.

It is not always necessary to hear testimony in order to determine whether the inferences to be drawn from a defendant's course of conduct support a finding of fraudulent intent.  But "credibility issues are to be left to the trier of fact to resolve on the basis of oral testimony *except* in extreme cases. The exceptional category is—exceptional." *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998).  *See generally Johnsson*, 551 B.R. 384 (six-day trial); *Flaugher*, 525 B.R. 67

(trial); *Grochocinski v. Eckert* (*In re Eckert*), 375 B.R. 474 (Bankr. N.D. Ill. 2007), *aff'd*, No. 07 C 6012, 2008 WL 4547224 (N.D. Ill. Apr. 2, 2008) (trial).

At a trial, the burden of proof will be on the Plaintiff to show by a preponderance of the evidence that Defendant's actions were knowing and fraudulent.  It will be most helpful to the court's analysis to hear directly from the Defendant regarding his actions, and to have the opportunity to evaluate his credibility through observation of his demeanor on the witness stand and through Plaintiff's cross-examination.

For all of the reasons stated above, the court will deny both the Plaintiff's motion for summary judgment as to Counts I and II, and the Defendant's motion for summary judgment as to Counts I and II.

## C.  Count III: 11 U.S.C. §§ 727(d)(3) and (a)(6) – Failure to Obey a Lawful Order of Court

### 1.  Standard under 11 U.S.C. §§ 727(d)(3) and (a)(6)

11 U.S.C. § 727(d)(3) states:

> (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if--…

> (3) the debtor committed an act specified in subsection (a)(6) of this section[.]

Subsection (a)(6) of this section states, in relevant part:

> (6) the debtor has refused, in the case--

> (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify[.]

In order to grant summary judgment in favor of the Plaintiff on his claim for relief under § 727(d)(3), the court must find that no material question of fact exists that Defendant refused to obey an order of this court.  Conversely, to grant Defendant summary judgment, the court would

22

have to find that no material question of fact exists that he did *not* refuse to obey an order of this court.

### 2. "Refused" to obey an order of the court means that a defendant acted willfully and intentionally

Both the Plaintiff and the Defendant cite to *Eckert* in their discussion of § 727(d)(3):

> Section 727(d)(3) ensures that the bankruptcy estate and the creditors will remain protected if the debtor receives a discharge but later refuses to obey a court order….

> Courts have diverged on the issue of whether the statutory word "refused" requires an element of willfulness or intent. The term "refused" is not defined in the Bankruptcy Code. The majority of courts have found the word "refused" requires the showing of a willful or intentional act as opposed to a mistake or the inability to comply. The word "refused," as used in § 727(a)(6)(A), must be distinguished from the word "failed," which is used elsewhere in § 727(a). As a consequence, the mere failure of a debtor to obey a court's order, without more, is insufficient to deny or revoke a debtor's bankruptcy discharge.

*Eckert*, 375 B.R. at 480 (citations and quotation omitted). *See Smith v. Seferian*, No. 11 C 5036, 2011 WL 6753989, at *4 (N.D. Ill. Dec. 21, 2011) (affirming the bankruptcy court's decision on summary judgment and holding that "the party seeking revocation must demonstrate a willfulness on the part of the debtor"); *Szafron v. Wielogosinski* (*In re Wielogosinski*), 628 B.R. 547, 552 (Bankr. N.D. Ill. 2021) (entering judgment for the defendant  because the evidence established only a "simple discovery dispute," as opposed to "cases where debtors engage in a pattern of openly disparaging and disregarding orders from the court"); *Pereira v. Gardner* (*In re Gardner*), 384 B.R. 654, 669-70 (Bankr. S.D.N.Y. 2008) ("the denial of a discharge under § 727(a)(6) requires that the debtor willfully and intentionally refused to obey a court order").

This court will follow the majority line of cases and require Plaintiff to prove a "willful or intentional" act.  The Seventh Circuit has told us that objections to discharge are construed strictly against the objector and liberally in favor of the debtor. *See Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011).  Consequently, an inadvertent or negligent failure to comply with an

order should not result in denial of discharge.  *See Clark v. Tieszen* (*In re Tieszen*), No. 98B27403, 1999 WL 669263, at *8 (Bankr. N.D. Ill. Aug. 24, 1999) ("The mere failure to obey an order is insufficient to deny a discharge; there must be a willful refusal.").

If there is no material dispute of fact that the Defendant acted willfully or intentionally in a refusal to obey a court order, only then would revocation of the discharge be appropriate under § 727(d)(3).  Conversely, if there is no material dispute of fact that Defendant did *not* act willfully or intentionally, then it is appropriate to grant summary judgment in Defendant's favor.

3. **There is no material dispute of fact that Defendant received the Turnover Order and failed to comply with its terms**

In order to meet his burden that Defendant's lack of compliance was willful and intentional, Plaintiff must show that there is no material dispute of fact that Defendant "received the order in question and failed to comply with its terms."  *Smith v. Jordan* (*In re Jordan*), 521 F.3d 430, 433 (4th Cir. 2008) (quotation omitted).  *See Kutrubis v. Bowman* (*In re Kutrubis*), 486 B.R. 895, 901 (N.D. Ill.) *aff'd on other grounds*, 550 F. App'x 306 (7th Cir. 2013) (unpublished order); *Meyer v. Grady* (*In re Grady*), 607 B.R. 659, 670 (Bankr. C.D. Ill. 2019) ("The objecting party … can meet its burden of proof by showing that the debtor received the order and failed to comply.").

The court finds that there is no material dispute of fact that Defendant received the Turnover Order and did not comply with it.  The Trustee served the Defendant and Defendant's attorney with the Turnover Order on June 23, 2021.  The Turnover Order states on its face that compliance is required within five *days*.  Five *weeks* later, the Trustee filed the Contempt Motion.  He acknowledged that Defendant had complied with the Turnover Order in part, but not in full.  In ruling on the Contempt Motion, the court agreed with the Trustee that Defendant had not fully complied with the Turnover Order.

24

> The Debtor failed to turnover all proceeds or establish where such proceeds were spent or are being held. The Debtor made only the Partial Payment Amount [Cashier's Check] and did so only after the Trustee filed a Motion for Contempt.

Contempt Order, p. 5.

Indeed, Defendant acknowledges as much in his brief. He contends that "mere receipt of the Turnover Order and subsequent non-compliance do not constitute 'refusal' as set forth in *Eckert*. Debtor argued in good faith that there was compliance with the Turnover Order[.]" Defendant's Responsive Brief, p. 8. He admits, as he must, that in the Contempt Order this court found that he failed to turn over proceeds of the Mortgage, as required by the Turnover Order.

### 4. The burden of production shifts to the Defendant to explain his non-compliance

Therefore, Plaintiff has established that no material dispute of fact exists that Defendant "received the order in question and failed to comply with its terms." *Jordan*, 521 F.3d at 433 (quotation omitted). The burden of production now shifts to the Defendant, who has "an obligation to explain his non-compliance." *Id.* at 434 (quotation omitted). *See Kutrubis*, 486 B.R. at 901.

> Of course, untimely compliance is not necessarily always equated with a refusal to comply. But evidence of a failure to comply with an order by the deadline is sufficient to shift the burden to the Defendant to explain whether and to what extent he ultimately complied or why he did not comply.

*Gargula v. Nave* (*In re Nave*), No. 13-72140, 2015 WL 3961768, at *6 (Bankr. C.D. Ill. June 29, 2015) (citation omitted). *See Inghram v. Henry* (*In re Henry*), No. 14-70113, 2015 WL 7731429, at *4 (Bankr. C.D. Ill. Nov. 30, 2015) ("Here, the Debtor does not dispute that the Turnover Order was a lawful order and she admits that she did not comply with the original terms regarding the timing of her payment to the Trustee. All that is in dispute then is whether she "refused" to comply with the Turnover Order.").

25

### a. Eventual compliance with an order is only part of an explanation

Defendant asserts that he need not explain his non-compliance because he is *now* "compliant with the orders of this Court and has been since prior to the filing of this Complaint." Defendant's Responsive Brief, p. 9. Defendant distinguishes *Eckert*, in which the defendant's refusal to comply with various court orders was ongoing at the time the court issued its decision. Essentially, Defendant asks the court to find that no material question of fact exists that he has sufficiently explained his delay in complying with the Turnover Order.

Plaintiff states that "[a]s a matter of law, compliance (including compelled compliance) is not sufficient to excuse the Debtor's prior wrongs." U.S. Trustee's Reply in Support of his Motion for Summary Judgment, p. 3. In support of this statement, Plaintiff cites *Payne v. Wood*, 775 F.2d 202, 205 (7th Cir. 1985). As a Seventh Circuit decision, *Payne* is binding on this court. But it does not require the court to find for Plaintiff. It is not a § 727(d)(3) or (a)(6) decision. The question in *Payne* was how much of the insurance proceeds from the loss of certain personal property belonged to the debtors, and how much to their estate. When the panel considered whether the debtors might be allowed to amend their list of exemptions, it noted that they had never tried to amend, and that it was likely "too late" in any event. In *dicta*, the *Payne* panel commented that omitting "assets may be a good reason to deny or revoke a discharge" because "[w]hen it is hard to detect an effort to evade the law, the penalty must exceed the profits of the evasion." *Id.* Moreover, the *Payne* court looked beyond the debtors' failure to amend their schedules, noting that their testimony suggested "that they meant to hide assets if they could get away with it." *Id.*[3]

---

[3] The other cases Plaintiff cites in support of his statement that eventual compliance does not excuse Defendant are persuasive, but not binding, both because they are not Circuit-level decisions and because of the unique facts of this case. In *Flaugher*, for example, the court stated that "[t]he Debtor's belated, partial compliance with his duty to turn over estate property to the Trustee does not cure his earlier failures." 525 B.R. at 73. However, the court

26

11 U.S.C. § 727(d)(3) requires a finding that Defendant refused to obey the court's order, which this court has determined means a willful and intentional failure to comply. The precise question before the court is not whether eventual compliance constitutes an excuse. It might, or it might not. *Compare Notinger v. Weisberg* (*In re Weisberg*), 202 B.R. 332, 335 (Bankr. D.N.H. 1996) ("The Order was discharged by the Court itself, based upon the determination that the Order had been complied with…. The debtor did not 'disobey' an Order of the Court, and consequently there is no basis for revoking the debtor's discharge in accordance with sections 727(d)(3) and 727(a)(6) of the Bankruptcy Code.") *with CNR Holdings, LLC v. Coffey* (*In re Coffey*), 647 B.R. 365, 393 (Bankr. E.D. Ark. 2022) ("[S]ection 727(a)(6)(A) of the Bankruptcy Code permit[s] the bankruptcy court to predicate denial of discharge on an intentional contempt, even though the contempt may have been purged by the time the bankruptcy court enters its order denying the contemnor's discharge.") (quotation omitted).

Instead, the court must ask whether Defendant has shown a sufficient *explanation* for that delayed compliance. Moreover, since the question is being posed in cross motions for summary judgment, the true issue is *whether any material dispute of fact exists* as to whether Defendant has sufficiently explained the delay in compliance.

---

determined *after a trial* that debtor's testimony was not credible. In *Kleven v. Mrozinski* (*In re Mrozinski*), the debtor asked the court to *vacate a default judgment* when he complied with a turnover order after entry of the judgment. 489 B.R. 818 (Bankr. N.D. Ind. 2013). The court held "that a debtor who has had a discharge revoked or denied due to the failure to obey a court order is not entitled to have the discharge restored, through the use of Rule 60(b)(5), by coming forward with belated compliance." *Id.* at 823. In *Schoemperlen*, the defendant complied with the court's order on the eve of trial on the discharge complaint. 332 B.R. at 182. Finally, in *Olsen v. Reese* (*In re Reese*), 203 B.R. 425, 431-32 (Bankr. N.D. Ill. 1997), the court held that debtors' eventual turnover of requested information and an income tax refund would not be considered to be cooperation under the standard of § 727(d)(2), not (d)(3). The procedural posture and the facts of these cases are sufficiently different from this proceeding that they do not persuade this court.

    **b.  There is a material dispute of fact as to whether Defendant met his burden of production as to a sufficient explanation for his delay in obeying the Turnover Order**

In this proceeding, we do not yet have testimony from the Defendant to support an excuse for his delayed compliance, or for the court to conclude that he "meant to hide assets if [he] could get away with it[.]" *Payne*, 775 F.2d at 205.  The burden has shifted to Defendant "to explain whether and to what extent he ultimately complied or why he did not comply." *Nave*, 2015 WL 3961768, at *6.

Defendant contends that he complied with the Turnover Order "after entry of this Court's Order that provided the guidance necessary to determine what property was lacking." Debtor's Motion for Summary Judgment, p. 15.  He also argues that he "repeatedly and openly sought direction on the manner of compliance[,]" and that he "quickly complied" after the court clarified "what was necessary to comply with that order, and what was necessary to purge the contempt[.]" Debtor's Reply in Support of Motion for Summary Judgment, pp. 4 and 5. Defendant argued in the Contempt Response that he could not effectuate turnover without being provided "the sum that the Trustee requires to be paid."  Additionally, Defendant wrote in the Contempt Response:

> The undersigned has sought repeatedly on behalf of the Debtor, both before and after the Debtor obtained the [Cashier's C]heck, to obtain confirmation from the Trustee, as is customary in Chapter 7 asset cases, of the amount the Trustee is seeking to complete the liquidation phase and commence distribution to the allowed creditors.

Defendant asserts that there is no material dispute of fact that these proffered explanations are sufficient to defeat a finding that his failure to obey the Turnover Order was willful and intentional.  Regardless of whether such positions are sufficient to justify Defendant's non-compliance, statements in legal memoranda are not evidence. *See Mitze v. Colvin*, 782 F.3d

28

879, 882 (7th Cir. 2015) ("assertions in briefs are not evidence").  In order to judge Defendant's

credibility, the court must hear testimony from him.

> Barnes argues that failure to comply with two of the six orders at issue (the two
> orders entered after the discharge was granted) ought not be a basis for revoking
> the discharge because Barnes eventually complied, citing *In re Weisberg*, 202
> B.R. 332 (Bankr.D.N.H.1996). Although it is tempting to follow *Weisberg*
> because experience teaches that in almost all instances belated compliance with a
> routine order to correct filing deficiencies will not rise to the level of the debtor
> having, before such compliance, "refused" to comply, *the issue is one that ought
> to be addressed at a trial*.  A creditor might show that the debtor's failure was a
> deliberate disregard of the court's orders—as opposed to a misunderstanding of
> what was required, or inaction attributable to circumstances which prevented the
> debtor timely to respond to the court's order—and that no other circumstances
> justify treating the failure, despite the routine nature of the order, as other than a
> "refusal."

*Colombo Bank, FSB v. Barnes* (*In re Barnes*), 348 B.R. 613, 617 (Bankr. D.D.C. 2006)

(emphasis added).  The *Barnes* court concluded that when exercising its discretion in

determining whether the debtor "refused" to obey a court order, the legal questions it would face

would be "best decided in the context of a fully developed factual record."  *Id.*

While the parties here have presented the facts they deem to be material, a trial offers the

opportunity for cross-examination and evaluation of credibility.  Neither of these are available

when a dispute – especially one so important as the status of a debtor's discharge – is decided on

the papers.

As stated above, there is no material issue of fact that Defendant received the Turnover

Order and that he failed to comply fully with its terms, triggering the Contempt Motion and an

evidentiary hearing.  The only remaining issue for trial on Count III will be whether Defendant

can meet his burden "to explain his … behavior to the Court's satisfaction."  *Gugino v. Cardenas*

(*In re Cardenas*), Adv. No. 10-6091-JDP, 2011 WL 3510941, at *2 (Bankr. D. Idaho Aug. 10,

2011).  *See Eckert*, 375 B.R. at 480 (If the plaintiff demonstrates that the defendant failed to

comply with a court order, "[s]uch a showing imposes upon the debtor an obligation to explain noncompliance.").

As the court stated in the concluding paragraphs of section III(B), it will be most helpful to the court's analysis to hear directly from the Defendant regarding his actions, and to have the opportunity to evaluate his credibility through observation of his demeanor on the witness stand and cross-examination.  There is no material dispute of fact that Defendant knew of the Turnover Order and did not comply in the required timeframe.  At trial, the burden of production is on Defendant to explain his actions.  Plaintiff carries the ultimate burden of persuasion on the question of whether Defendant's discharge should be revoked.  *See* Fed. R. Bankr. P. 4005 ("At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection."); *Kontos v. Manevska* (*In re Manevska*), 587 B.R. 517, 535 (Bankr. N.D. Ill. 2018) ("the ultimate burden here lies with the Plaintiff"); *Gardner*, 384 B.R. at 669.

For all of the reasons stated above, the court will deny both the Plaintiff's motion for summary judgment as to Count III, and the Defendant's motion for summary judgment as to Count III.

**IV.     CONCLUSION**

In the Complaint, the U.S. Trustee requested that the court revoke Tahseen's discharge under 11 U.S.C. §§ 727(d)(2) and (d)(3).  The parties filed cross motions for summary judgment. For all of the reasons stated above, the court will enter an order denying both the U.S. Trustee's motion and Tahseen's motion.  This adversary proceeding will be set for further status in that order.

Date:   April 18, 2023

_____
DAVID D. CLEARY
United States Bankruptcy Judge